UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                                Cr. No. 5:16-CR-339-2 (NAM)

TAMMY M. MARTIN,

      Defendant.
_____

## DEFENDANT MARTIN'S SENTENCING MEMORANDUM

### I. Introduction

  On August 21, 2017, pursuant to an Agreement between the parties, Tammy M. Martin (hereinafter "Tammy") entered a plea of guilty to Counts Two, Three and Four of a seven count indictment charging that from in or about 2001 through in or about 2008, in the Northern District of New York, she used minors, whose identities are known, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, in violation of 18 U.S.C. §§ 2251 (a) and (e) and 2(a). At the time of sentencing, the Government will move to dismiss Count One of the indictment, which charges Ms. Martin with Conspiracy to Sexually Exploit a Child in violation of 18 §§ U.S.C. 2251(a) and (e). Ms. Martin was not charged in Counts Five, Six or Seven of the Indictment.

  Sentencing has been set for June 7, 2018, at 11:00 a.m. in Syracuse, New York.

## II. Background of Tammy Martin

Most of the information contained in this section of the sentencing memorandum was gleaned from my interviews with Ms. Martin and Norman J. Lesswing, Ph.D's Report of Psychological Evaluation, which will be filed separately.

Tammy had a remarkably unfortunate and horrid childhood. She is estranged from her mother, sister, children and husband. Not unlike most of her life, she is alone and abandoned.

Tammy accepts full responsibility for the things she has done to the victims in this case; she is extremely remorseful and incredibly disappointed in herself. She has, on more that one occasion, remarked that she hates herself for what she did to these children. She concisely stated: "I'm accountable."

Tammy grew up the victim of horrible sexual and physical abuse. Prior to the sexual abuse beginning, she existed in a cold and cruel environment, replete with domestic violence, with her own mother responsible for that treatment. After her parents split up, her mother moved in and began a romantic relationship with a man named Darnell. Shortly thereafter, when Tammy was just nine years old, Darnell began molesting her. He continued to rape her, on a regular and ongoing basis, for the next year and a half. During this time, Ms. Martin was also molested by her mother's nephews, who were young adults at the time.

Young Tammy believed that she was fortunate, that the abuse was over, when her mother split up with Darnell and found a new boyfriend named Art. Unfortunately, Art and Darnell were cut from the same cloth, and the sexual abuse continued. She felt as if she was being passed around for the perverse sexual gratification of her mother's boyfriends.

When Tammy was 11 years old, she went fishing with a male friend of her mother. During the fishing trip, she was raped and stabbed. When she gathered the courage to disclose

the rape to her mother, she was told that she deserved it. Child Protective Services became involved, but nothing was done, and the revoltingly violent incident was forgotten about by everyone, except Tammy.

When Tammy was 12 years old, her mother's friend Kathy forced Tammy and her sister to perform sex acts on each other. Kathy also purposely burned Tammy's sister with cigarettes, as Tammy was forced to look on.

At about the same time, other adults involved Tammy in a drinking game. Tammy became drunk and passed out. The drinking game culminated in Tammy being gang raped on a farm. Child Protective Services again became involved and Ms. Martin was placed in foster care, which she describes as "rough." She was not provided with counseling, and the foster care situation was neither nurturing nor supportive, and she continued in this environment until she was approximately 14 or 15 years old, at which time she believes she was adopted by a woman named Jeri. Ms. Martin now realizes that Jeri provided her with a loving, safe and stable place to live, but that she was so damaged from the years of being raped and molested, that she "didn't know what to do with it." It was at this point that Tammy turned to drugs and alcohol to try to numb the pain of her past. She regrets that she was unable to make the most of the environment that Jeri provided.

Tammy moved out of Jeri's house after graduating from high school and became romantically involved with an older man named Norman. That relationship lasted only a short time, and she found herself out on the street, with nowhere to go. Troubled but resourceful, Tammy enlisted in the United States Navy, thinking that would provide the stability and security that she craved, and that would allow her to piece her life back together. Unfortunately, she was soon medically discharged due to menstrual irregularities.

Shortly after being discharged, Tammy became involved with a "mean – controlling" man named John, with whom she had two children. Her relationship with John was short-lived, and she was forced to move in with friends, who were crack cocaine addicts. Resultantly, Tammy's children were taken away from her and placed in the custody of John.

It was shortly thereafter that Tammy met Clif Seaway, whom she described as alcoholic and unemployed. Because Seaway showed her even "the least bit of attention," she felt safe and thought he was "ok." She and Seaway began using crack cocaine and he convinced her to engage in bestiality with his dogs, which he videotaped for his sexual pleasure. The dogs became aggressive toward her, and she advised Seaway that she did not want to continue to engage in sexual activities with the dogs. To gain her continued compliance, Seaway threatened to expose the videos and threatened her in regards to the custody of her son. He made a "mittens" for the dogs' paws so that they would not scratch her as much. Out of fear and embarrassment, Tammy complied and the forced bestiality continued, hundreds of times. She drank to the point of extreme intoxication every day to try to escape her brutal reality.

Seaway, no longer satiated by bestiality, convinced Tammy to molest their children, which he photographed and videotaped for his sexual gratification. The abuse of their children, and the other child victim, occurred in escalating fashion until 2006, at which time Tammy, at the behest and urging of her sister, abruptly left Seaway.

As is the case with many toxic relationships, she remained in contact with Seaway until 2008, when she had a nervous breakdown, to the point of immobilization. She was completely unable to function. She self medicated with alcohol, prescription medication and street drugs and eventually worked her way past the breakdown by "burying things and moving on." Unbeknownst to her, Seaway was still molesting their daughter.

Her solution to the breakdown was not effective, as she continued to resort to using crack cocaine and alcohol. A DWI followed, for which she was sentenced to probation. Being unable to use known street drugs while on probation, she turned to synthetic marijuana to escape her reality.

Ms. Martin was able to slowly rebuild her life. She met and married a man named Peter. Although he was an alcoholic, it was probably the healthiest relationship she has experienced in her entire life. Although still drinking and using marijuana until the time of her arrest, she adequately attended to her daughter's needs and became employed as a manager of a convenience store, which she is proud of.

### III. Psychological Evaluation and Identified Mental Health Issues

Norman J. Lesswing, Ph.D was hired by the defense to interview and prepare a psychological assessment of Tammy, which, as earlier stated, will be provided to the court and the Government.

Dr. Lesswing administered the Personality Assessment Inventory (the "PAI"), which is utilized to measure psychological adjustment and symptomatology. Tammy's results were "marked by significant elevations across a number of different scales. In addition to identifying significant polysubstance abuse and drug dependency, the results of the PAI indicated "significant depressive experience," which plagues her with thoughts of worthlessness, hopelessness and personal failure. She has lost interest in normal activities, and no longer finds pleasure in things that were previously enjoyed. Social and interpersonal difficulties were also identified, which result in her being withdrawn and submissive, uncertain and indecisive. She is preoccupied with intense fears of abandonment and rejection. Dr. Lesswing and Tammy believe

that these traits made her vulnerable to the pressure Seaway exerted upon her to engage in the behaviors previously discussed herein.

Dr. Lesswing has also diagnosed Tammy as suffering from PTSD and major depressive disorder. Dr. Lesswing concluded that the following factors contributed to Tammy's vulnerability for complicity with Seaway: (1) life history replete with neglect, abuse, sexual trauma and instability; (2) rejecting mother who failed to protect her and whom she could not trust; (3) complete absence of experience with which to learn proper judgment about men and maternal values; (4) lack of trust in the availability and reliability of help from others; (5) vulnerable to coercion based in adverse childhood experiences; and (6) chronic compromise of her insight, judgment and functioning caused by alcoholism.

Although it is difficult to imagine an individual who has needed help and intervention to the extent Tammy has during her life, especially during her childhood and adolescence, she nevertheless received no support, treatment or other help.

## IV. Sentencing Recommendation

### A. Guidelines Calculation

The guideline calculation, as it now stands, is: Total Offense Level 43, Criminal History Category I. The guidelines sentencing range for imprisonment is life. The mandatory minimum sentence on each count is 180 months, which may be run concurrently.

### B. Sentencing Factors

We respectfully request that the court sentence Tammy to the mandatory minimum sentence on each count of conviction, to be run concurrently. Such sentence is sufficient but not greater than necessary, consistent with the purposes of sentencing as statutorily set forth in 18 U.S.C. § 3553. Such a sentence will reflect the seriousness of the offense, will promote respect

for the law and just punishment, and will afford adequate deterrence to future criminal conduct, thereby protecting the public from future criminal conduct of this defendant. Lifetime supervised release thereafter will reflect, to all, that a lengthy and substantial deprivation of liberty, and lifelong monitoring, will result as a minimum for such conduct. 18 U.S.C. § 3553(a)(2)(A), (B), (C) and (D).

Counsel respectfully requests that the court consider Tammy's unfortunate (to say the least) childhood, her psychological diagnoses and drug and alcohol addictions when determining an appropriate sentence for Tammy's conduct in this case. It is clear from Tammy's history that her entire life has been affected by her incredibly horrific childhood, the resultant impact that it had upon her psychological health (causing her to be vulnerable to Seaway's constant manipulation and prodding) and early-onset drug and alcohol addiction. Simply stated, Tammy clearly has never had an opportunity to be successful in life, and, indeed, her upbringing caused her to make some of the most disastrous choices possible.

Based upon the foregoing, counsel respectfully requests that Tammy be sentenced to the mandatory minimum term of imprisonment, 180 months, on each count, to be run concurrently.

## V. Conclusion

For all the foregoing legal and factual reasons, we believe that a sentence of 180 months would provide just punishment and satisfy all the statutory requirements of sentencing outlined in § 3553(a).

Dated: May 16, 2018

                                        Respectfully submitted,

                                        Law Office of H Dana VanHee, PLLC

By: _____
H Dana VanHee (512529)
Attorney for Tammy Martin
The University Building
120 East Washington Street, Suite 721
Syracuse, New York 13202
phone: (315) 422-5655
email: dana@vanheelaw.com